Our last case today is People v. Booker. That's case number 140476 for the appellant Amanda Kimmel for the appellee Luke McNeil. The attorneys will note that Justice Atherton, who is a third member of this particular panel, is not here today, cannot attend. However, he's read the briefs, he'll be listening to the audio of the hearing today and will fully participate in the final decision made by the court. Ms. Kimmel, please proceed. May it please the court, counsel, I'm Amanda Kimmel with the Office of State Appellate Defender here on behalf of Neville Booker. At a hearing on a petition to lift the stay of an adult sentence, the trial court found that Mr. Booker had recklessly committed a mob action. At the time, Mr. Booker was 15 years old. He was attending a high school haunted house with his 8-year-old brother, his cousin, and a friend, while his father waited in a parked car in the high school parking lot. Now, there's no dispute that Neville's cousin and 19-year-old James Buford engaged in a fight that night and that other people were present and ultimately also participated in that altercation. However, the trial court's findings on Neville's conduct were manifestly erroneous for two reasons. First, the state failed to show the actus reus that Neville personally used any force or violence during the fight that occurred. And second, the state failed to show the mens rea that Neville acted recklessly in this situation. Because Neville was a juvenile under the protections of the Juvenile Court Act, the trial court shouldn't have applied a reasonable juvenile standard instead of a reasonable person standard. And the erroneous ruling by the court had severe consequences. Because Neville was under an EJJ prosecution, he was subject to a 5-year sentence, part of which was served in an adult Illinois Department of Corrections facility at the age of 17. Now, turning to my first point, the state failed to show that Neville personally engaged in any force or violence. Here the state alleged that Neville committed a mob action under subsection 1A of the statute, which required them to prove that he himself engaged in the knowing or reckless use of force or violence. The First District held as much in and rayed Deontay Jay when it evaluated the two different sections, excuse me, the two different, the mob action statute under pre-2010 amendments and post-2010 amendments and found that that change in language required that the state, after 2010, to show that Neville or anyone charged under the mob action statute, for that matter, personally engaged in the use of force or violence. Here the facts simply do not bear that out. There was no evidence that Neville taunted anyone, confronted anyone, or struck or fought anyone. Okay, let me just stop you there. You said there's no evidence that he taunted or confronted. Is that relevant? Are either of those two components necessary for finding a mob action? In this case, he has to engage in some type of conduct and there are some cases where simply yelling is enough to be a participant in the mob action. If he's part of a group and others in the group taunt or confront, but he himself is found to engage in force or violence, he can then be found guilty of mob action. If he himself commits the force or violence, there's multiple sections of the mob action statute. One he was charged under, the felony version, requires that that person actually knowingly engage in force. The other two sections, two and three, just require that the person knowingly assemble. So really, and those are misdemeanor versions of mob action, so really the statute differentiates between when there is a mob, the person that actually does the violence versus people that are part of the mob and violence happens. Someone else in the mob commits the mob action. Either are punishable, but one is a felony and one is a misdemeanor. And the facts of this case really bear out that distinction. The trial court's ruling, which was attached in an appendix to the reply brief, described the conduct of the group that Neville was in. It described the reckless conduct of the group in confronting the other group. However, the trial court didn't describe any individual conduct by Neville. It didn't describe him doing anything specific. And I think the testimony related to how the two groups came together, the confrontation between the two groups, everyone agreed that Neville's cousin, Marquis, and 19-year-old Mr. Buford are the two that began fighting.  One state witness testified that Mr. Buford and Marquis charged each other. Another one testified that the two groups of boys encountered each other in the parking lot, neither being the aggressor, the groups themselves. Neville testified that when he exited the parking lot, Mr. Buford's group had already traveled through the haunted house. They were still in the parking lot when Neville exited and that that group of boys ran towards them. What about the evidence swinging the book bag? Sure. There is evidence that Neville, from his own testimony, stated that he was carrying a book bag. He had a backpack that night because he had donated shoes as part of the entrance to get into the haunted house. So he had a backpack and while he was trying to get to the safety of his father in his father's car, which was parked in the parking lot, kids grabbed at his backpack. So in an effort to get away from them, he took the book bag off and swung it. But he testified he was unsure if he hit anyone with his backpack. The state did not put on any witness that suggested that Neville hit them with the backpack. There was no evidence that that act of swinging the backpack was in any way force or violence if he didn't swing and hit anyone. He would have to have connected in order for it to constitute force or violence? I believe so. Other crimes allow for force or threat of force as part of the elements of their proof, but the Mob Action Statute doesn't make any reference to threat of force. It just says force or violence. So yes, I believe he would have actually had to connect. Well, if he were engaged in the fight in some way, wouldn't that be evidence of violence? Yes, if he were engaged in the fight. And we do have the testimony from the state witness, Anquan, who testified that while he himself was fighting, he said that Neville tried to join in the fight. That was his testimony. That's the closest thing. Well, then there was another witness who testified that the defendant was involved. Yes, and he also testified that Neville could have been trying to break up the fight. When he described Neville's involvement, it was that he saw Neville was on the ground. And that really buttresses Neville's own testimony that once the fight started, he realized he couldn't break it up. He ran to his dad's car. Multiple people were punching him. He swung his book bag at one point, fell to the ground by his father's car. None of the state witnesses described Neville punching anyone back. No witness testified that Neville punched them. Mr. Buford, one of the main two people fighting, had never seen Neville's face before. That was his testimony. What do you say to the state's argument that the testimony that he was involved in the fight would allow the trial court to infer that he was using force? I don't think that that logically follows. If someone is present and only receiving punches, surely they're involved in the fight. But that doesn't indicate that they themselves ever fought back. And Neville's testimony is that he didn't, and the state didn't rebut that with any testimony. And even Anne Kwan's statement that Neville tried to join in the fight, he gave a statement to the police shortly after that fight. Neville's name is not in the police report anywhere. So he didn't describe Neville's conduct immediately after the fight in any way to the police officer who took his statement. So the state really didn't put on any evidence, again, that Neville taunted, yelled, any way confronted the group, or fought or struck anyone. The state failed to show the actus reus, that he personally engaged in force or violence himself. Now, during this fight, which everyone agreed happened in approximately a minute, Neville had to make two split-second decisions. The first was when he exited the haunted house and saw Mr. Buford's group still present in the parking lot, he immediately sent his brother to the safety of their father in the car. He waited a few moments, and then he also went to the safety of his father's car. And this really brings me to my second point, which is that the state failed to show the mens rea of recklessness because Neville acted as a reasonable juvenile in this situation. Now, the recklessness is the minor's ability to anticipate risk and understand what results will occur. And it's important that there be a different standard for a reasonable juvenile versus a reasonable adult because adults are more capable of thinking through and understanding what risks are likely to result from the conduct and from the situation in which they're in. And this conclusion that the reasonable juvenile standard should be inherent in the recklessness statute is proper for three reasons. First, the juvenile status is an important situational factor, and other jurisdictions with similar recklessness statutes have held exactly that. Second, Illinois already uses the reasonable juvenile standard in the civil context. And third, Illinois has for over 25 years used the reasonable juvenile standard in the criminal context in the purpose of evaluating custody for determining if someone's Miranda rights are proper. So Illinois has already been using it, and this is just another application to utilize the reasonable juvenile standard. Even acknowledging your argument, aren't the facts in this case such that certain members of Mr. Booker's group who are juveniles, they, based on what they heard coming from the other group, recognize that this was an invitation to fight and that a fight was forthcoming? Well, all the other people that testified were actually part of Mr. Buford's group, and then one person that was part of neither group that saw the incident from a moving car. All of those people were aware, and some of them were present when Mr. Buford and Marquis, Neville's cousin, had previously gotten into a fight. Neville was not present for that previous fight. He was in custody as part of this case. So he may or may not have been aware that a prior fight occurred. Certainly Mr. Buford testified he thought that there was going to be a fight later that night. Neville testified that he did not know there was going to be a fight. When he exited the high school haunted house, he was not sure that a fight would occur. So there was testimony that some people were anticipating a fight. Neville's testimony was not part of that, and again that gets back to his mens rea and the level of culpability. In an Arizona case which uses the reasonable juvenile standard in the context of recklessness, there they found that boys were playing with shopping carts, and one of them hit a parked car. The boy was surprised by this, surprised that it caused damage. And the court found that because he couldn't anticipate that risk, he was surprised by it, he couldn't have been acting recklessly because he was unaware of the risk. And that's exactly what we have here for Neville. Neville was not aware of the risk that a fight would immediately ensue upon exiting the haunted house. He wasn't present for the prior fight, and again... Well, why did he have his little brother go to the truck then if he didn't anticipate a fight? So there were two different times to make a decision. One was immediately upon entering, exiting the haunted house and entering the parking lot. Mr. Buford's group had already gone through. Neville, when he entered the parking lot, didn't know that they would be waiting in the parking lot still. He had no way of knowing that. Once he saw them, he immediately sent his brother away. And then once it became clear that a fight had already started, he immediately left. And while maybe an adult would realize and make a perfectly rational decision, Neville's conduct was that of a reasonable juvenile. He got his brother to safety and then very quickly went to the safety of his parent. Now the trial court's ruling finds fault with Neville's conduct by saying that he should have gone back into the school and gotten a staff member. And that would also be reasonable conduct for a juvenile. But seeking the protection of the parent, which is what Neville did here, was equally reasonable. It was certainly not a gross deviation from the standard of care that a reasonable juvenile would exercise. And that is really what it comes down to with recklessness. Was Neville able to fully appreciate the likely results of what was about to occur? Again, he was unaware of this previous fight. And then was his reaction in this situation a gross deviation? In here, all the testimony confirms that Neville essentially in under a minute decided, this isn't safe for my 8-year-old brother, this isn't safe for me, and went to his parent. And I think that that's a common sense decision for a juvenile in this situation to make. It was reasonable to seek out the protection of his parent and not go. Certainly there's another option, which the trial court articulated, going back inside. But Neville's conduct of going to his father was certainly not unreasonable. And therefore, the state really failed to show the mens rea in this situation. Now, the reasonable juvenile standard should be taken as part of the recklessness standard based on the Illinois court's use of it in both the civil context and the other criminal context. In the civil context, oftentimes behavior of a juvenile, whether it's determining if they should jump on a trampoline in a certain way and whether or not that's dangerous, or dive into a shallow swimming pool, those tort cases, a reasonable 14-year-old, reasonable 15-year-old standard is applied. A reasonable juvenile of a like age. And because recklessness also relies on, if the person was reasonable in this situation, it's appropriate to apply that here. And that's been really spelled out in the case law from Illinois on the use of the reasonable juvenile standard in the context of Miranda. The U.S. Supreme Court recently, in 2011, in J.D. v. North Carolina, used the reasonable juvenile standard in the criminal context and said that that was the law of the land. However, Illinois had been doing it all the way back since 1989 in People v. Lucas, where they said various factors should be taken into account to determine custody for Miranda, including age, that they must have an objective determination as to what a reasonable man, innocent of any crime, would have thought had he been in defendant's shoes. And that was reaffirmed in People v. Braggs in 2003, that they're concerned with what a reasonable person in defendant's shoes would have thought about his or her freedom of action. The reasonable person, we envision, must at least be wearing comparable footwear. And that's really what we're asking here. If the recklessness mens rea is applied, it's based on what a reasonable defendant in that defendant's situation is. And in the case of Neville, that defendant is a minor, so his conduct and decision-making should be judged against that of a reasonable minor as opposed to a reasonable adult. In conclusion, the state failed to show the actus reus that Neville personally engaged in any use of force or violence himself, as well as failing to show the mens rea of recklessness because Neville's conduct was that of a reasonable juvenile. Thank you. Thank you. You'll have your button, Mr. McNeil. May it please the Court, Counsel? So Respondent's first two arguments are sufficiency of the evidence arguments. Basically, with two small tweaks, and those are the standard of review and the burden of proof here. The burden of proof at the trial level was only preponderance of the evidence instead of the much more stringent proof beyond reasonable doubt. Pardon? What evidence of force or violence was there? Reasonable inference can be made. Two witnesses testified the Respondent was involved in the fight. Let's just start there. Are you conceding there was no direct evidence of violence or force? Respondent testified he swung his book bag in self-defense. A reasonable inference from that could be that that's an offensive move, not a defensive move, and that could be a use of force as well. However, the strongest evidence, I would say, are two witnesses saying Respondent was involved in the fight. I wish they would have asked if he swung or something like that. There were no follow-up questions. This isn't the strongest evidence. However, it only needs to be more likely true than not that Respondent used force in this fight. A common person saying that someone's involved in this fight means they're a participant in the fight. That's what the trial court found. You could have two people involved in a fight, one doing the battering, the other one being pummeled. And by inference, you're saying the one being pummeled can be found to have used force or violence? I mean, by all accounts, this wasn't a one-on-one fight. This was a group fight. So Respondent being a participant in that fight, a reasonable inference to make is that he was swinging. He was fighting. Let me follow up on Justice Harris's question. What if the person decided to engage in the fight and just lost, did get pummeled, didn't even land a blow, but just engaged in the fight but just got beaten up, if you will? Would that be force or violence? I would say it's violence. I mean, and chances are at some point he's going to do some – it makes no sense to just stand there with your arms by your side. No human would do that if they're in the middle of a fight. Respondent himself knew there was going to be a fight. He'd sent his eight-year-old brother to the car. He knew that's – I mean, if he really was trying to protect his brother and didn't know there was going to be a fight, he would have went along with his brother. He obviously knew where the car was. He sent his younger brother there. He didn't. He knew there was going to be a fight. He was trying to protect his younger brother. Was there evidence? Did he testify? And I'm sorry, correct me if I'm wrong. Did he testify that he was trying to break up the fight? I think – I don't know if that was him or one of his friends who testified, DeVante, but one of the defense witnesses testified he was trying to break up the fight. The trial court was under no obligation to believe that. They're in the best position to evaluate the credibility of all the witnesses. The two state witnesses testified that he was involved. The opposite conclusion is not clearly evident here. That's where we're going against the manifest way of the evidence standard. The opposite conclusion has to be clearly evident that it was more likely true than not that respondent used force or violence in this brawl. How about A.B.'s testimony when A.B. was asked if the defendant joined in the fight and A.B. responded yes, he tried to. Would that be sufficient evidence of force or violence? I would say so. And along with Mr. Johnson's testimony, the respondent was involved in the fight. On cross-examination, there was testimony elicited that he could have been trying to break up the fight. Of course, anything's possible. So that cross-examination should be taken with a grain of salt. Again, the trial court, as fact finder, was in the best position to evaluate the testimonies. Basically, what we have here is an uphill battle for a respondent from the get-go. Again, it was the lowest burden of proof, and on appeal, on review, it's the strictest standard of review. It wasn't the strongest case of a mob action. However, there was a reasonable inference to be made that a respondent used force or violence as he was a willing participant in the fight. As far as the reckless or knowing states of mind, this is sort of shoehorned in to try to talk about the recklessness. The trial court used the word reckless in describing the respondent's behavior leading up to the brawl. I would argue that he was reckless at that point. He knew there was going to be a fight. He didn't go back in. He didn't go with his brother to his dad's car. He continued to engage with the group. However, he was a knowing and willing participant. The trial court found he was a willing participant in the fight. He didn't recklessly commit mob action here. He knowingly committed mob action. The trial court's order says that. He didn't end up in the fight by accident. Two witnesses testified that he was involved in the fight. This was not a reckless state of mind. However, I would argue it would be reckless under any standard, juvenile or... In fact, it was reckless even to respondent's subjective standard. He knew there was going to be a fight. Him sending his brother to his dad's car showed that he knew there was going to be a fight, and he still stuck with the group all the way until the fight started, until apparently the fight ended. Apparently, it was a quick amount of time, but the respondent was there. I can see the trial court easily dismissing any, oh, the fight just happened, and I happened to be in the middle of it. If anything, I tried to break it up. I can see the court easily dismissing that as an incredible story. As far as the constitutional issue is concerned, respondent relies on Roper, Miller, and Graham III's U.S. Supreme Court cases that deal with Eighth Amendment cruel and unusual punishment arguments. This court in People v. Croom, Justice Turner, concurred on distinguished those cases as applying only to those narrow circumstances, those circumstances being a juvenile who's sentenced to death or a juvenile who's sentenced to natural life without parole. This is clearly not an Eighth Amendment violation, nor is it a severe sentence argument. People v. Croom said those cases are clearly distinguishable because they applied a different analysis under a different test for an alleged violation of a different constitutional provision, not the automatic transfer to adult court at issue here. Of course, the automatic transfer provision isn't at issue here, but the point is it's a different constitutional provision, procedural due process here, than it was in the Roper, Miller, and Graham cases. The Illinois Supreme Court also distinguished Roper, Miller, and Graham and Patterson, which I also cited, a constitutional challenge raised under one theory cannot be supported by decisional law based purely on another provision, and there they specifically rejected defendant's procedural due process argument. This case is just not apt to talk about the reasonable juvenile standard because respondent's conduct leading up to the mob action was unreasonable as a juvenile standard because it was unreasonable even to respondent's subjective view. Respondent knew a fight was happening and he still stuck with the group, still participated in the fight. As far as the actual state of mind in the trial court's findings, again, I argue that the trial court found that respondent knowingly engaged in mob action here. It was not a reckless endeavor. It was reckless leading up to it. However, the mens rea of the actual offense was knowing. If there are no more questions, I think the court is adjourned. Seeing none, thank you. Any rebuttal? A few points on rebuttal. First, reasonable inferences are appropriate. Regardless of the fact that this is a preponderance of evidence case for lifting the state of the adult sentence, there still has to be some evidence, some evidence that Neville participated in this mob action through the use of his own force or violence, and there simply is none. To Justice Harris's point, Neville testified he was trying to break up the fight, and a state's witness, Damien, testified that Neville could have been trying to break up the fight. So those, and Damien certainly wouldn't be characterized as a friend. He was part of the other group, part of Mr. Buford's group. Well, what about the contrary evidence? When A.D. is asked, did Mr. Booker join in the fight, the response is, yes, he tried to. It's, yes, he tried to. However, he did not give any specific, he never testified that Mr. Booker actually did join in the fight by physically punching anyone or hitting anyone. There was no testimony presented, even from Anne Kwan, that there was any personal acts by Mr. Booker of force or violence. And that really goes to what the issue is with the trial court's ruling. The trial court's written decision discusses the conduct of the group which Neville was in. And under the subsection of mob action with which Neville was charged, the state was required to prove that Neville himself actively, you know, that he personally engaged in force or violence, regardless of the conduct of the whole group. And the trial court's own finding does not line up with the subsection of mob action which was alleged in the petition to lift the stay. Now, moving to the state's assertion that the trial court's ruling was that Neville was a knowing and active participant in the mob action. The trial court uses the language, and this is on page three and four of the appendix, that Neville acted recklessly in confronting the other group, and if Neville's group had behaved reasonably, the confrontation would not have occurred. Both the language of acting recklessly and engaged reasonably indicates that the mens rea of recklessness was, what was that issue here? Finding someone consciously is aware of their actions does not negate a finding of recklessness. Both recklessness and knowledge require that the person be aware of their actions, but they are not mutually consistent mental states. There's a difference level of culpability if someone's reckless versus someone has knowledge, and that is because with knowledge, a person is certain that an event will occur, and with recklessness, the person is not certain what the result is as a result of their conduct. But the statute says either or. Correct, absolutely, yes. I'm not disputing that the court could have found he knowingly engaged in conduct, but simply that the trial court's own written order uses the language of recklessness and not of knowledge. Thank you. Okay. Thanks to both of you. The case is submitted and the court stands in recess until further call.